The QUEENS MEDICAL
CENTER, Plaintiff,

v.

Sam C. KATZ, Harry Huculak, Shirley M. Steedman, Beulah M. Muir, Ann Foran, Clarence J. Whalen, Global Claims Management, Inc., Canada Life Assurance Company, John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe Entities 1–10, Defendants.

No. Civ. 98–00752 DAE.

United States District Court,
D. Hawaii.

Oct. 26, 1999.

R. Patrick Jarress, Honolulu, HI, for plaintiff.

Katharine M. Nohr, Miyagi Nohr & Myhre, Honolulu, HI, Stuart Cowan, Law Offices of Stuart Cowan, Honolulu, HI, for defendant Beulah Muir.

### ORDER GRANTING PLAINTIFF'S MOTION AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

KURREN, United States Magistrate Judge.

Before this court are Plaintiff Queens Medical Center's ("Queens") Motion for Partial Summary Judgment and Defendants Global Claims Management Inc., Medi–Excel Assistance, Inc., and Canada Life Assurance Company's (collectively "Global") Motion for Partial Summary Judgment. This matter came on for hearing on October 15, 1999. After careful review of the motions, supporting and opposing memoranda and relevant affidavits, and arguments of counsel, the court GRANTS Queens' Motion and DENIES Global's Motion, as discussed herein.

### BACKGROUND

Queens brought this action to recover for medical services rendered to six Canadian nationals ("Individual Defendants") who were injured in an automobile accident on Oahu on February 20, 1997. The unpaid bills for these medical services rendered by Queens total several hundred thousand dollars. All of the Individual Defendants were insured under a travel

---

4. "The best laid schemes o' mice an' men gang aft a-gley." Robert Burns 1759–1796.

insurance plan called "Away From Home Assistance," underwritten by Canada Life Assurance Company ("Canada Life"), with Global Claims Management, Inc. ("Global") and Medi–Exel Assistance, Inc. ("Medi–Exel") as Canada Life's claims administrators. At the time of the accident, the six individuals were passengers in a Hertz rental car, which was insured under the Hawaii Motor Vehicle Insurance law, as codified at Haw.Rev.Stat. ("HRS") § 431:10C–101, et seq. Specifically, Chapter 431 provides a no-fault statutory scheme of insurance in Hawaii.

Queens has already received the maximum payment under the no-fault statute from Hertz' coverage. Although the Individual Defendants' insurance coverage under Global provides them with excess coverage for injuries sustained during travel, Global has refused to pay, contending that the amount billed is excessive.

By their cross-motions for summary judgment, the parties seek an answer to the following question: Is the statutory fee schedule set forth in the Hawaii no-fault law, which imposes certain limits on medical expenses arising out of a motor vehicle accident, applicable to motor vehicle related medical expenses billed to a foreign and/or alien insurer[1] who is not a Hawaii authorized no-fault insurer? If the fee schedule is not applicable, Global's obligation to Queens is substantially higher than it would be under the Hawaii no-fault fee schedule. The parties have consented to proceed before a United States Magistrate Judge on these motions. Accordingly, this court decides this issue pursuant to 28 U.S.C. § 636(c).

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.,* 809 F.2d at 630; Fed. R.Civ.P. 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indemnity Co.,* 952 F.2d 1551, 1558 (9th Cir.1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.,* 809 F.2d at 630; *Blue Ocean Preservation Soc. v. Watkins,* 754 F.Supp. 1450, 1455 (D.Haw.1991); Fed.R.Civ.P. 56(e). If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *T.W. Elec.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Citadel Holding Corp.*

---

1. HRS § 431:3–101 defines a foreign insurer as "one formed under the laws of any state, as defined in 431:1–213, other than this State." An alien insurer is "one formed under the laws of a nation other than the United States." HRS § 431:3–101. Global and Medi–Exel use a Vermont address. Canada Life is located in Lennoxville, Quebec, Canada.

*v. Roven,* 26 F.3d 960, 964 (9th Cir.1994); *Blue Ocean,* 754 F.Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.,* 809 F.2d at 631 (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Inferences must be drawn in favor of the nonmoving party. *T.W. Elec.,* 809 F.2d at 631. However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *Id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *Bator v. State of Hawaii,* 39 F.3d 1021, 1026 (9th Cir.1994) (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)).

## DISCUSSION

This case involves a question of statutory interpretation which appears to be an issue of first impression in Hawaii. The central issue is whether the no-fault fee schedule applies to all motor vehicle accidents regardless of who has to pay the bills, or whether it applies only when regulated no-fault insurers are involved. The Hawaii no-fault provision in question specifically provides that:

(b) The charges and frequency of treatment for services specified in section 431:10C–103.5(a), except for emergency services provided within seventy-two hours following a motor vehicle accident resulting in injury, shall not exceed the charges and frequency of treatment per-

missible under the workers' compensation schedules.

HRS § 431:10C–308.5. The referenced section, HRS § 431:10C–103.5, applies to "personal injury protection benefits, with respect to any accidental harm . . . ." and defines the types of appropriate and reasonable treatment available under the statute. Under the Hawaii motor vehicle insurance code, "accidental harm" is defined as "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person." HRS § 431:10C–103. Global argues that because Queens rendered medical services for "accidental harm" as defined by the statute, the statutory fee schedule should apply to Global's portion of the bill. By Global's interpretation, the statutory fee schedule is intended to apply to *all medical services* rendered as the result of *any* motor vehicle accident.

However, in order to determine the meaning of HRS § 431:10C–308.5, the section must be applied in the context of the Hawaii no-fault insurance scheme as a whole. *See King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). Article 10C of the Hawaii Motor Vehicle Insurance states its purpose as follows:

(1) Create a *system* of reparations for accidental harm and loss arising from motor vehicle accidents;

(2) Compensate these damages without regard to fault; and

(3) Limit tort liability for these accidents.

HRS § 431:10C–102 (emphasis added). The purpose of the Chapter is not to create an overall regulatory scheme for medical providers, as Global suggests, but to create a scheme of motor vehicle insurance. Therefore, the section in question must be applied within the context and per the definitions for the entire Hawaii no-fault insurance code. To find otherwise would be contrary to the general rule of statutory interpretation that courts "must read the language of a statute in the context of the entire statute and in a manner

consistent with its purpose." *Alvarez v. Liberty House, Inc.*, 85 Hawai'i 275, 278, 942 P.2d 539, 542 (1997) (quoting *State v. Mezurashi*, 77 Hawai'i 94, 97, 881 P.2d 1240, 1243 (1994)).

Accordingly, the court finds that the no-fault insurance law is designed to apply only to those defined as "insurers" under the Chapter. Global does not meet the definition of "insurer" under the plain meaning of the no-fault statute.[2] To allow foreign or alien insurers like Global to benefit from the statutory fee schedule without subjecting them to the regulatory provisions of the no-fault law would be contrary to the purpose and legislative intent of the statute, which is to reduce and stabilize motor vehicle insurance costs in Hawaii by limiting the number of claims eligible for tort action through a system of regulations. Global should not be allowed to benefit from the fee schedule provided in HRS § 431:10C–103.5(a) unless they are an insurer under the statute and are also required to comply with the 30–day payment requirement and other provisions of the no-fault system. *See* HRS § 431:10C–304.

Therefore, the court finds that the fee schedule provided in HRS § 431:10C–103 and referenced in the no-fault section HRS § 431:10C–308.5 is intended to apply to medical services rendered as a result of motor vehicle accidents and paid by a no-fault insurer. For medical treatment covered by a no-fault insurance policy as defined under Chapter 431, medical providers must limit billings to the statutory fee and abide by all other provisions of the statute. For all other medical services, Queens and other medical providers are entitled to charge their usual and customary rates.

*CONCLUSION*

Based on the foregoing, Queens's Motion for partial summary judgment is GRANTED and Global's Motion for partial summary judgment is DENIED.

IT IS SO FOUND AND ORDERED.

---

2. An insurer is "every person holding a valid certificate of authority to engage in the business of making contracts of motor vehicle insurance in this State." HRS § 431:10C–103. In order to have a valid certificate of authority to engage in the business of making contracts of motor vehicle insurance in Ha-

waii, an insurance company "must have a certificate of authority granted to it by the commissioner...." HRS 431:3–201(a). Hawaii's Commissioner of Insurance has no record or grant of authority for Global, Canada Life, or Medi-Exel. *See* Ex. 3 to Queens' Motion.